**Peter HUANG, et al., Plaintiffs,**

v.

**SENTINEL GOVERNMENT SECURITIES, et al., Defendants.**

**George SCHARFFENBERGER, et al., Plaintiffs,**

v.

**SENTINEL GOVERNMENT SECURITIES, et al., Defendants.**

Nos. 85 Civ. 8607(PKL), 86 Civ. 3370(PKL).

United States District Court, S.D. New York.

April 9, 1987.

Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, Beverly Hills, Cal. (Ellen J. Gleberman, Esq. of counsel), for plaintiffs.

Barrett Smith Schapiro Simon & Armstrong, New York City (Sandra J. Mullings, Esq. of counsel) for defendant Mercantile House Holdings.

LEISURE, District Judge:

■ Pursuant to Fed.R.Civ.P. 12(b)(2), defendant Mercantile House Holdings plc ("Mercantile"), a publicly held corporation existing under the laws of the United Kingdom, has moved to dismiss the amended complaint against it for lack of personal jurisdiction. By agreement among the parties, plaintiffs have had an extended opportunity to conduct discovery on the jurisdictional issues. Mercantile has provided documents and responded to interrogatories, but plaintiffs chose not to take any depositions. Plaintiffs have expressly stated that they did not require any further discovery on jurisdictional issues. *See* Mercantile's Reply Memorandum of Law ("Mercantile's Reply") at 2. No evidentiary hearing on the instant motion has been held. Accordingly, plaintiffs need only make a *prima facie* showing of jurisdiction through their own affidavits and supporting materials. *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). *Accord Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 363–64 (2d Cir.1986). All pleadings and affidavits are construed in the light most favorable to plaintiffs, and where doubts exist, they are resolved in plaintiffs' favor. *Hoffritz*, 763 F.2d at 57.[1]

## Background

Plaintiffs, who are residents of New York and California, are former owners of limited partnership interests in defendant Sentinel Government Securities ("SGS"). Plaintiffs allege that SGS, numerous related defendants (the "related defendants"), and certain trading houses that dealt with

---

**1.** Mercantile has not argued that plaintiffs should be held to the preponderance of the evidence burden because substantial discovery has occurred. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984).

SGS violated the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and committed fraud in connection with the trading of federal government securities, repurchase agreements and reverse repurchase agreements. Defendant Lasser Marshall, Inc. ("Lasser Marshall") was the major trading house used by SGS. Mercantile, which is a London-based investment holding company, is the ultimate parent of Lasser Marshall, although there are several corporate layers between the two companies. SGS was never a subsidiary or affiliate of Mercantile, and none of the plaintiffs had any contact with Mercantile with respect to the matters raised by the amended complaint.

Mercantile was formed in 1972 by London-based promoters as a private investment holding company for the purposes of acquiring and making investments in various businesses in the financial services area. Affidavit of Andrew J.C. Sommerville, sworn to on May 30, 1986, ¶ 4 (hereinafter referred to as the "Sommerville Affidavit"). At present, Mercantile holds interests (either directly or indirectly) in approximately 60 principal operating countries throughout the world. *Id.* at ¶ 10. Mercantile's business has been to make acquisitions and investments in a variety of companies whose day-to-day operations, as in the case of Lasser Marshall, are run by the managers of those companies. Mercantile itself has only about 30 employees, including senior management, accountants, and administrative, clerical and maintenance personnel. *Id.* at ¶ 12. Mercantile derives its income from dividends and interest generated from the investment of its own funds. *Id.* at ¶ 13. It does not maintain offices, mailing addresses, building directory listings, telephones or telephone listings, nor does it own any real estate, maintain employees or have any bank accounts in the United States. *Id.* at ¶ 15.

Lasser Marshall is a New York corporation chartered in 1908 and engaged principally in the business of foreign exchange and money brokering. Affidavit of J. Timothy Garland, sworn to on May 27, 1986, ¶ 2 (hereinafter referred to as the "Garland Affidavit"). Lasser Marshall was acquired by Mercantile in 1977 and is now one of 16 subsidiaries of M.W. Marshall (Overseas) Ltd., which, in turn, is one of four subsidiaries of M.W. Marshall & Co., Ltd. (which is wholly owned by Mercantile). Sommerville Affidavit, ¶ 16; Garland Affidavit, ¶ 3. Lasser Marshall has offices in New York and Los Angeles, and employs approximately 255 brokers and 50 administrative employees. Garland Affidavit, ¶ 5. The operations of Lasser Marshall are conducted by its United States-based officers under the supervision of Edward Baltes, who worked for the company prior to the time it was acquired by Mercantile. Garland Affidavit, ¶ 8; Sommerville Affidavit, ¶ 17. Lasser Marshall not only manages its own funds, but also maintains its own books and records and files separate tax returns, which are not submitted to its immediate corporate parent or to Mercantile for approval. Similarly, Lasser Marshall's financial statements are not submitted for review by its parent or Mercantile before issuance, and Lasser Marshall maintains a separate employee benefit plan. Garland Affidavit, ¶¶ 5, 6.

Lasser Marshall's board of directors consists of three members: Baltes and two London-based individuals. Garland Affidavit, ¶ 9. Each Lasser Marshall director is also one of Mercantile's 19 directors, but only one of the Lasser Marshall directors (not Baltes) is a member of Mercantile's executive committee. Sommerville Affidavit, ¶ 20. Lasser Marshall's money market division, which engaged in the challenged transactions with SGS, started in 1976, prior to Mercantile's acquisition of the company. At its peak, this division consisted of four traders and one clerical worker. Garland Affidavit, ¶ 10.

Plaintiffs' case against Lasser Marshall and Mercantile is based on the following theories of recovery. *See* Plaintiffs' Memorandum of Points and Authorities in Opposition to Mercantile's Motion to Dismiss ("Plaintiffs' Memorandum") at 23–24. First, plaintiffs allege that Lasser Marshall and Mercantile engaged in securities fraud in connection with plaintiffs' purchases of

their limited partnership units in SGS. Second, plaintiffs allege that Lasser Marshall and Mercantile violated RICO by engaging in the predicate acts of mail and wire fraud in connection with their preparation and distribution of false or misleading trade confirmations. Plaintiffs claim that defendants knew such confirmations would be used by SGS to report tax losses to its limited partners and that SGS' sole reason for engaging in such "trades" was to report these tax losses to its limited partners. Third, plaintiffs allege that Mercantile and Lasser Marshall committed fraud in connection with the foregoing activities by knowingly misrepresenting the nature of the underlying "trades" at issue and by conspiring with the related defendants in furtherance of the fraudulent scheme. The primary injuries claimed by plaintiffs are the lost tax benefits resulting from an Internal Revenue Service determination that the transactions between SGS and Lasser Marshall, among others, were sham transactions and that therefore SGS incurred no legitimate tax losses which could be passed through to its limited partners.

## Discussion

Plaintiffs assert personal jurisdiction on the basis of § 22 of the Securities Act of 1933, § 27 of the Securities Exchange Act of 1934, and § 1965 of RICO. Plaintiffs' Memorandum at 15. Since it has been held that "Congress meant § 27 to extend personal jurisdiction to the full reach permitted by the due process clause" of the Fifth Amendment, *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1339–40 (2d Cir.1972), the Court must undertake a "minimum contacts" analysis. *Cf. International Shoe Co. v. Washington,* 326 U.S. 310, 316–17, 66 S.Ct. 154,

158–59, 90 L.Ed. 95 (1945).[2] Plaintiffs do not assert jurisdiction on the ground that Mercantile is "doing business" or is "present" in New York or in the United States, generally. Plaintiffs' Memorandum at 18. Rather, plaintiffs contend that Mercantile committed acts and caused acts to be conducted in New York and caused effects in New York by acts occurring elsewhere. *Id.* By plaintiffs' own admission, any contacts serving as jurisdictional predicates in this case must be related to plaintiffs' cause of action. *Id.* at 17. Defendant argues that the exercise of personal jurisdiction over Mercantile would violate due process standards. Mercantile's Memorandum in Support of Motion at 44–45.

In *Leasco,* the Court of Appeals for the Second Circuit instructs

that where the defendant is not personally present and there is no other demonstrable basis for jurisdiction, it is 'essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'

468 F.2d at 1340 (quoting and applying *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). *See also Asahi Metal Industry Co. v. Superior Court,* — U.S. —, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987) (plurality opinion) (noting recent reaffirmance of *Denckla* standard). Moreover, it is clear that there must be a significant causal relation between defendant's jurisdictional contacts and plaintiffs' cause of action. *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 999–1000 (2d Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). *Cf. McGee v. International Life Insurance*

---

**2.** Service of process under § 27 is "subject to the constraints of the Due Process clause of the Fifth Amendment." *Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974). A foreign defendant must have "sufficient connection with the United States to satisfy the 'minimal contacts' required to legitimate extraterritorial service of process by a State." *Id.* at 1143 n. 9. *Cf. Asahi Metal Industry Co. v. Superior Court,* — U.S. —, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (plurality opinion) (Due Process clause

of Fifth Amendment considered relevant); *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293–95 (3rd Cir.) (Fifth Amendment imposes a "general fairness test incorporating *International Shoe's* " minimum contacts doctrine.), *cert. denied,* — U.S. —, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985). In this case, plaintiffs have asserted that Mercantile's contacts with the state of New York support jurisdiction. Plaintiffs' Memorandum at 18.

*Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (suit "based on a contract which had substantial connection" with forum state).

■■■ As to acts committed within the forum, the connection between defendant's contacts and plaintiffs' injuries must not be "too tenuous to permit those torts to be considered as 'arising from' " the conduct serving as a jurisdictional predicate. *Bersch,* 519 F.2d at 1000. *See also* Restatement (2d) of Conflict of Laws § 36 (hereinafter referred to as the "Restatement") (any cause of action "arising from the act"). With respect to effects in the forum caused by acts done elsewhere, "the test for *in personam* jurisdiction is somewhat more demanding" than just "some causal relation." *Bersch,* 519 F.2d at 1000. *See also* Restatement § 37 ("any cause of action arising from these effects" unless unreasonable). Moreover, when a court bases personal jurisdiction on effects in a state caused by acts done elsewhere, it must proceed " 'with caution, particularly in an international context.' " *Bersch,* 519 F.2d at 1000 (quoting *Leasco,* 468 F.2d at 1341).[3] *See also Aurora Enterprises, Inc. v. National Broadcasting Co.,* 688 F.2d 689, 696 (9th Cir.1982) (requiring "an evaluation of the defendant's contacts in relation to the cause of action"); *Sun First National Bank of Orlando v. Miller,* 77 F.R.D. 430, 435 (S.D.N.Y.1978) (requiring "causal nexus between acts in question and [plaintiff's] proposed theories of recovery"); *Doll v. James Martin Associates,* 600 F.Supp. 510, 518 (E.D.Mich.1984) (defendants' minimal participation held "too attenuated from the precise facts that undergird the various theories of liability").

*Cf. Intermeat, Inc. v. American Poultry Inc.,* 575 F.2d 1017, 1023 (2d Cir.1978) (whether relationship among plaintiff, defendant and forum state "make it fair and reasonable" to compel defendant to trial in forum state).

### A. Defendant's Control Over Affilliate

■ In their opposition to defendant's motion, plaintiffs disclaim any "attempt to bring Mercantile in solely on the ground that it is the parent corporation of Lasser Marshall and Lasser Marshall's acts are thereby attributable to Mercantile." Plaintiffs' Memorandum at 18. Indeed, plaintiffs have not sought to demonstrate that Lasser Marshall is a "mere department" of Mercantile, *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984), or that Lasser Marshall acted as Mercantile's common law agent, *Cutco Industries,* 806 F.2d at 366.[4] *Compare City of New York v. Exxon Corp.,* 633 F.Supp. 609, 620–21 (S.D.N.Y. 1986). *See also Sun First National Bank,* 77 F.R.D. at 436 (whether local affiliate acted as the agent or as as a mere department of foreign parent); Restatement § 52 (whether the "foreign corporation has such a relationship to the state that it is reasonable for the state to exercise such jurisdiction").

Yet, plaintiffs persist in peppering their argument with repeated references to Mercantile's alleged "direction," "instruction," and "control" control over Lasser Marshall. *See* Defendant's Reply at 16–18. These references are not only unsupported by

---

**3.** *Leasco* requires that the effect must occur " 'as a direct and forseeable result of the conduct outside the territory.' " 468 F.2d at 1341 (citation omitted). *See also Asahi Metal Industry Co.,* 107 S.Ct. at 1034 (" '[g]reat care and reserve' " accorded to exercise of personal jurisdiction in international field). In the instant case, considering the international context, the burden on the alien defendant, its negligible contacts with the forum, and the lack of causal nexus between its acts and plaintiff's claims, the exercise of personal jurisdiction would be unreasonable.

**4.** Plaintiffs' First Amended Consolidated Complaint (hereinafter referred to as the "Complaint") specifically refers to Mercantile only twice. ¶¶ 9, 37. Plaintiffs allege that Lasser Marshall "acted as the agent of [Mercantile], and with its authorization, consent, and ratification." *Id.* at ¶ 9. This conclusory allegation cannot alone suffice to establish a *prima facie* showing of common law agency. In any event, as previously discussed, plaintiffs have disclaimed reliance on the attribution of Lasser Marshall's acts to Mercantile due to an agency or other relationship between the corporations. Plaintiffs' Memorandum at 18.

citation to the documentary record,[5] but also are irrelevant given plaintiffs' express disclaimer of reliance on the corporate relationship between Mercantile and Lasser Marshall. "What plaintiffs continually seek to do in this case is to base jurisdiction over Mercantile on the acts of [Lasser Marshall], despite the fact that they cannot demonstrate the degree of domination and control necessary for such attribution." Defendant's Reply at 30. *See Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177–78 (9th Cir.) (no alter ego or agency relationship where parent and subsidiary acted as "distinct corporate entities"), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980); *Bellomo v. Pennsylvania Life Co.,* 488 F.Supp. 744, 746 (S.D.N.Y.1980) (Where a holding company acts as a mere "investment mechanism ... the subsidiaries conduct business not as its agents but as its investments.").

### B. *Defendant's Contacts with the Forum*

The only possible bases for jurisdiction over Mercantile are:

(1) Several transatlantic telephone calls during the late fall of 1980 from J. Timothy Garland, chief financial officer of Lasser Marshall, in New York, to Andrew Somerville, chief financial officer of Mercantile, in London. Garland told Somerville that Lasser Marshall was considering certain new kinds of transactions (such as the ones later effected with SGS) and Somerville suggested that Lasser Marshall review the propriety of the proposed new business with Lasser Marshall's New York counsel.

(2) Somerville's visit to New York in late January 1981, at which time he met with New York counsel and received direct confirmation of advice that had previously been given to Lasser Marshall regarding such transactions.

■ In short, the record [6] demonstrates merely that Mercantile indicated approval of Lasser Marshall's entry into a proposed new business, subject to clearance by New York counsel. The Court finds that such contacts do not constitute acts by which defendant purposefully availed itself of the privilege of conducting activities within the forum, "'thus invoking the benefits and protections of its laws.'" *See Leasco,* 468 F.2d at 1340 (quoting *Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239). *Cf. Morse Typewriter Co. v. Samanda Office Comminications Ltd.,* 629 F.Supp. 1150, 1156 (S.D.N.Y.1986) (mere stock ownership relationship insufficient to satisfy *Denckla* due process standard). *See also Aurora Enterprises,* 688 F.2d at 696 (approval of block sale not amounting to contract negotiation or consummation held inadequate to meet due process standard); *Kramer Motors,* 628 F.2d at 1178 (mere approval by British parent of marketing scheme developed by U.S. subsidiary held insufficient to satisfy due process requirement). *Accord Allen v. Toshiba Corp.,* 599 F.Supp. 381, 391–92 (D.N.M.1984); *James Martin Associates,* 600 F.Supp. at 518. Plaintiffs acknowledge that they have found no cases holding the due process standard satisfied on facts analogous to those of this case. Plaintiffs' Memorandum at 31.[7]

Moreover, the Court finds that even assuming that defendant's contacts qualify

---

5. *See infra* p. 491.

6. *See infra* note 8.

7. Plaintiffs contend this lack of support results from the "novel nature of the fraudulent scheme involved" here. *Id.* But as defendant notes, Defendant's Reply at 26–27, the nature of the transactions between Lasser Marshall and SGS is not the relevant issue. The inquiry must focus instead on Mercantile's involvement in those transactions. On that issue, plaintiffs have cited three breach of contract cases where the agreements in dispute were negotiated or concluded in New York. *Moser v. Boatman,* 392 F.Supp. 270, 274 (E.D.N.Y.1975); *ECC Corp.*

*v. Slater Electric, Inc.,* 336 F.Supp. 148, 151 (E.D.N.Y.1971); *Karlin v. Avis,* 326 F.Supp. 1325, 1328 (E.D.N.Y.1971). A comparison of the cases cited by plaintiffs and the instant case highlights the lack of purposeful activity by Mercantile. *See Infomed v. Healthcare of Louisville, Inc.,* 526 F.Supp. 1287, 1289–90 (D.N.J. 1981) (isolated visit held not to constitute purposefully availing oneself of privilege of conducting activities in forum); *Waukesha Engine Division, Dresser Americas, Inc. v. Banco Nacional De Fomento Cooperativo,* 485 F.Supp. 490, 493 (E.D.Wis.1980) (single inspection visit held insignificant).

as purposeful activity under *Denckla*, plaintiffs have filed to demonstrate the required causal nexus between defendant's acts and their claims. Plaintiffs address the causal relation requirement in the following paragraph.

> The nexus between Somerville's acts on behalf of Mercantile and plaintiffs' claims is clear and direct. First, Mercantile only allowed Lasser Marshall to proceed after Mercantile and Mercantile's lawyers had approved the SGS transactions. Second, Lasser Marshall continued the trades in January, 1981 only because Mercantile and Mercantile's lawyers approved these transactions.

Plaintiffs' Memorandum at 25. As is plain from the foregoing quotation, plaintiffs cite no evidentiary support for their characterization of Somerville's and Mercantile's acts. Plaintiffs' most pertinent submission on this score is a portion of a memorandum, dated November 15, 1983, from Barrett Smith Schapiro Simon & Armstrong to Charles M. Carberry, Assistant United States Attorney (hereinafter referred to as the "Barrett Smith Memorandum"). *See* Declaration of Deborah S. Bucksbaum, dated June 23, 1986 (hereinafter referred to as the "Bucksbaum Declaration"), Exhibit N at 7–8. The Barrett Smith Memorandum states the following:

> Soon after the meeting, Garland called Andrew Somerville in London to discuss [the SGS] proposal. Garland described the deals to Somerville during the course of one or more telephone calls, and expressed a concern that the transactions lacked economic substance. At about the same time, Garland talked about the proposed deals to Ed Baltes, the President of Lasser Marshall. Baltes normally had little involvement with the money market operation, but was consulted on all unusual business proposals.

Somerville, Baltes and Garland all agreed that [Lasser Marshall] should seek advice from LeBoeuf. They understood that, even if successful, the [SGS] transactions would not be expected to make a material contribution to [Mercantile's] earnings. If a clean approval as to the legality of the proposed new business was not forthcoming from LeBoeuf, [Lasser Marshall] would decline to participate with [SGS].

*Id.* (footnotes omitted). This narrative fails to establish an adequate causal relationship between Mercantile's acts and plaintiffs' cause of action. In fact, none of the acts by Mercantile upon which plaintiffs assert jurisdiction, and no forseeable effects caused by such acts, had any direct connection with the offering by SGS of partnership units to plaintiffs or to plaintiffs' purchases of such units.[8]

Obviously, Sommerville's telephone calls with Garland and his January, 1981, trip to New York did not involve any contact with the plaintiffs and were not related in any way to plaintiffs' purchases of SGS partnership units. The communications between Mercantile and Lasser Marshall were simply a step undertaken by Lasser Marshall towards its own involvement with SGS. Moreover, the New York meetings occurred almost two months after plaintiffs' purchases were formally closed. Plaintiffs have not shown that Mercantile was involved in any structuring, negotiation or implementation of any of the transactions between Lasser Marshall and SGS. Accordingly, Garland's consulation with Sommerville merely reflects a degree of "control [which] is inherent in the parent-subsidiary relationship," and does not provide a basis for the assertion of jurisdiction. *See Saraceno v. S.C. Johnson & Son, Inc.*, 83 F.R.D. 65, 71 (S.D.N.Y.1979). The connection between these acts and

---

8. In its review of the entire record, the Court has also considered the following exhibits to the Bucksbaum Declaration, upon which plaintiffs rely, and found them to be insignificant: Exhibit N (Barrett Smith Memorandum) at 17, 20, 24; Exhibit D (excerpts from Mercantile monthly accounts for December, 1980); Exhibit E (Memorandum to Peter Bentley from A.J.C. Somerville, dated February 5, 1981); Exhibit J (Minutes of meetings of directors of Mercantile held on February 23, 1981, July 3, 1981, November 27, 1981, and January 25, 1982). These submissions involve incidental communications by Mercantile and its routine internal reports. They neither demonstrate purposeful activity under *Denckla* nor provide the requisite causal nexus between Mercantile's forum contacts and plaintiff's claims.

plaintiffs' claims is "too tenuous" to be considered a sufficient causal relationship for jurisdictional purposes, particularly in the international context. *Bersch*, 519 F.2d at 1000.[9] *Cf. Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 91–92 (2d Cir.1975) (Under N.Y.C.P.L.R. § 302, cause of action must "arise from" conduct by defendant that is asserted as jurisdictional basis.); *Dogan v. Harbert Construction Corp.*, 507 F.Supp. 254, 259 (S.D.N.Y.1980) (same); *Xedit Corp. v. Harvel Industries Corp.*, 456 F.Supp. 725, 729 (S.D.N.Y.1978) (holding insufficient a mere "link" in a "chain of events leading to [plaintiff's] claim" and requiring substantial proximity between forum contacts and allegedly unlawful acts).

■ Plaintiffs claim that Somerville's visit to New York in January, 1981, should be considered in determining jurisdiction even though it occurred after plaintiffs had purchased their SGS units and after Lasser Marshall had begun trading with SGS because Mercantile is alleged to be a co-conspirator in the SGS fraud and Somerville's visit is alleged to constitute an overt act in furtherance of the conspiracy. *See* Plaintiffs' Memorandum at 27. Plaintiffs rely on the principle that one who joins a conspiracy in progress ratifies all that has come before. *Id.* Once again, however, plaintiffs' narrative, *id.* at 26–27, is bereft of support in the record. Moreover, plaintiffs allege in only conclusory fashion that Mercantile was a member of a conspiracy. Complaint ¶¶ 14, 89.

> [I]t is well established that 'that acts of a co-conspirator may be attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant.' However, 'the bland assertion of conspiracy or agency is insufficient to establish jurisdiction.' Instead, plaintiffs must make a *prima facie* showing of conspir-

acy. They must allege specific facts warranting the inference that the defendants were members of the conspiracy, and 'come forward with some definite evidentiary facts to connect the defendant[s] with transactions occurring in New York.'

*Singer v. Bell*, 599 F.Supp. 350, 353 (S.D.N.Y.1984) (citation omitted). Plaintiffs have plainly made no such showing. They have failed to set forth evidentiary facts "upon which an inference of knowing attachment to a conspiracy" by Mercantile can reasonably be drawn. *See Singer*, 599 F.Supp. at 353. *See also Mandaglio v. United Brotherhood of Carpenters and Joiners of America*, 528 F.Supp. 468, 471 (E.D.N.Y. 1981) (requiring "more than mere 'bland assertions' of conspiracy or agency"); *McLaughlin v. Copeland*, 435 F.Supp. 513, 532–33 (D.Md.1977) ("mere allegation" of conspiracy held "clearly insufficient").[10]

Accordingly, defendant's motion is granted and plaintiffs' complaint against it is dismissed.

SO ORDERED

---

**9.** *See also supra* p. 489.

**10.** Plaintiffs also argue that Somerville's "direction" to Garland to continue dealing with SGS caused Lasser Marshall to continue to participate in the fraud and thus increased plaintiffs' injuries. Plaintiffs' Memorandum at 27. As stated previously, however, there is inadequate support for plaintiffs' characterization of

Somerville's acts. Somerville's discussions with Garland and his business trip to New York do not satisfy the "purposeful activity" test established by *Denckla*. Moreover, the link between, one the one hand, the conversations and the New York visit and, on the other hand, plaintiffs' claims is far too tenuous to support the exercise of personal jurisdiction.