**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.,
Plaintiffs,**

v.

**Michael R. MILKEN, Lambert Brussels Associates Limited Partnership, Groupe Bruxelles Lambert S.A., SAIF Investments B.V., Pargesa Netherlands B.V., et al., Defendants.**

**No. 91 Civ. 0433 (MP).**

United States District Court,
S.D. New York.

Dec. 19, 1991.

---

Cravath, Swaine & Moore, New York City (Rory O. Millson, of counsel), for plaintiffs.

Debevoise & Plimpton, New York City (Andrew Hartzell, Edwin G. Schallert and Gary W. Kubek, of counsel), for defendants LBA, GBL, SAIF and Pargesa.

## OPINION AND ORDER

MILTON POLLACK, Senior District Judge.

Defendants Lambert Brussels Associates Limited Partnership ("LBA"), Groupe Bruxelles Lambert S.A. ("GBL"), SAIF Investments B.V. ("SAIF"), and Pargesa Netherlands B.V. ("Pargesa"), (collectively "the foreign defendants") have moved jointly to dismiss the claims against them for lack of jurisdiction over the subject matter and over the person, for failure to state claims upon which relief can be granted under federal and state securities and antitrust laws, and for failure to state with particularity the circumstances constituting fraud.

This action was commenced on January 18, 1991. The Amended Complaint, dated August 15, 1991, asserts claims under:

(1) the Securities Exchange Act of 1934 §§ 5, 9 and 10(b), and Rules 10b–5 and 10b–6;

(2) the Securities Act of 1933 §§ 11 and 12(2);

(3) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (b), (c) and (d);

(4) the Sherman Act §§ 1 and 2, 15 U.S.C. §§ 1 and 2; and

(5) under state securities and antitrust laws.

Because the court finds, for the reasons discussed below, that it lacks jurisdiction over the person of the foreign defendants, the defendants' other motions are not addressed in this decision.

### Background

The securities claims posited herein are asserted under provisions of the federal and state securities laws that cast liability on persons who exercise control over parties that violate the statutes. The Amended Complaint alleges that the foreign defendants are "controlling persons" of Drexel Burnham Lambert Inc. ("Drexel Inc.") and Drexel Burnham Lambert Group, Inc. ("Drexel Group"), (collectively "Drexel"), within the meaning of § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), which states that:

(a) Every person who, directly or indirectly, controls any person liable under a provision of this chapter or of any rule or regulation thereunder shall also be liable jointly or severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

This section is the basis on which plaintiffs would make the foreign defendants liable for the Drexel employees' alleged violations of the Securities Exchange Act of 1934 §§ 5, 9 and 10(b), and Rules 10b–5 and 10b–6. Section 15 of the Securities Act of 1933 is substantially identical to § 20 of the 1934 Act, and would be used by plaintiffs to make the foreign defendants liable for the Drexel employees' alleged violations of the Securities Act of 1933 §§ 11 and 12(2). The Amended Complaint also charges that the foreign defendants are liable for alleged primary violations of the California and Texas securities laws by Drexel employees by reason of the "controlling person" provisions of those laws, Cal.Corp. Code § 25504 and Tex.Rev.Civ.Stat.Ann. Art. 581–33(F) respectively.

LBA is a Bermuda partnership with its registered office in Hamilton, Bermuda. All of the general and limited partners of LBA are European corporations. LBA owns stock in a number of corporations, including shares with approximately 27% of the voting power in Drexel Group. LBA has the right to designate nominees for a minority of the directors of Drexel Group and Drexel Inc.

GBL is a Belgian corporation with its principal place of business in Brussels, Belgium. With assets of approximately 140 billion Belgian francs ($4 billion), GBL is one of Belgium's largest holding companies. It has investments in financial services, petroleum, media and several other industries in Belgium and elsewhere. Its stock is publicly traded on the Brussels stock exchange.

Both SAIF and Pargesa are Netherlands corporations with their principal places of business in Amsterdam. SAIF is both a general and limited partner of LBA. Pargesa is a wholly owned subsidiary of Pargesa Holding S.A., a Swiss corporation, which is a limited partner of LBA.

Neither LBA, GBL, Pargesa, nor SAIF maintains any place of business or office in the United States. None of the foreign defendants has any employees, agents, real estate, phone listings, mail boxes, or bank accounts in the United States. None is qualified or licensed to do business in the United States, nor does any conduct any trade or business there.

None of the foreign defendants is alleged to have had any contact with the United States in connection with the management or conduct of any of the savings and loan institutions included among the plaintiffs. The foreign defendants are not alleged to

have been involved in the statements about the junk bond market discussed in the Amended Complaint or in any of the alleged sales of bonds to S & L's.

Rather, the Amended Complaint alleges that the foreign defendants, through LBA, exercised control over the management and policies of Drexel. The primary support in the Amended Complaint for these allegations is the foreign defendants' appointment of directors of Drexel Group and Drexel Inc. Each year from 1982 until 1988, at least six persons affiliated with the foreign defendants served on the board of Drexel Group. Each year from 1984 until 1988, at least two persons affiliated with the foreign defendants served on the board of Drexel Inc.

In further support of its claim that the foreign defendants were involved in managing Drexel, the Amended Complaint also states that GBL's first "main principle" as stated in its 1986 Annual Report, is to " 'ensure an influential position in the management of its investments,' " and that GBL " 'do[es] not consider [its] role as one of a mere passive shareholder. Rather, [GBL] seek[s] ... to direct [each companies'] operations toward common objectives.' " (Amended Complaint, ¶ 192).

The Amended Complaint states that the foreign defendants actively participated in the business of Drexel, but support this statement only by the allegations that the foreign defendants placed junk bonds in Europe for Drexel and traded securities through accounts with Drexel, that the foreign defendants consulted with Drexel on some unspecified Drexel financings, and that Pargesa and GBL formed a joint venture in Bermuda with Drexel, called Transcapital, for the purpose of involving foreign investors in the junk bond markets. Transcapital, allegedly a creation of the head of Pargesa and Michael Milken, is claimed to have been given the opportunity to purchase, and did purchase, equity sweeteners (warrants), that were part of a Drexel High Yield and Convertible Bond Department offering but were not made available to other less-favored Drexel customers.

The Amended Complaint further claims that Drexel contributed substantially to the profits of the foreign defendants.

*Analysis*

The federal statutes under which plaintiffs' claims against the foreign defendants arise, confer jurisdiction over the person of foreign defendants in this Court to the limits of the due process clause and provide for worldwide service of process. See Securities Exchange Act of 1934 § 27, 15 U.S.C. § 78aa (Supp.1991); Clayton Act § 12, 15 U.S.C. § 22 (1973); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir.1972) (stating that the language of Section 27 "demonstrates an intention to authorize service on a defendant who can be "found" only in a foreign country, and although the section does not deal specifically with *in personam* jurisdiction, it is reasonable to infer that Congress meant to assert personal jurisdiction over foreigners not present in the United States"). Thus, the Court's analysis must focus on whether the foreign defendants have minimum contacts with the United States sufficient to satisfy due process. Due process requires that the foreign defendants either have engaged in continuous and systematic activities in the forum or that they have " 'purposefully directed' [their] activities at residents of the forum" and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).

Plaintiffs argue that because the claims against the foreign defendants under the federal and state securities laws involve control person liability, jurisdiction over the person can be asserted for purposes of adjudicating those claims based on contacts of these defendants with the forum involving control over Drexel. The alleged contacts include the foreign defendants' status as parent corporations of Drexel, their representation on the board of directors of Drexel, their activities in doing business with Drexel in foreign countries, and their self-professed interest in

being active in safeguarding their United States investments.

Plaintiffs dwell in the Amended Complaint and in their brief on the foreign defendants' status as parent corporations of Drexel and on their representation on the boards of Drexel Inc. and Drexel Group. In ¶¶ 193, 194 and 195 of the Amended Complaint, plaintiffs identify the representatives of the foreign defendants on the Drexel boards, (¶ 193), state that these representatives "regularly attended board meetings in the United States", (¶ 194), and describe the "upstream linkage of the directorates between Drexel and GBL and Pargesa." (¶ 195). Based on these relationships, and without alleging that any particular Drexel policies were affected by the minority representation of the foreign defendants on the Drexel boards, the Amended Complaint charges that "through th[eir] ownership [the foreign defendants] have exercised substantial control over Drexel." (¶ 184).

However, a parent-subsidiary relationship does not itself create jurisdiction over the person unless the subsidiary is the alter ego of the parent or a mere agent acting at the parent's directions. See *Blount v. Peerless Chemicals (P.R.) Inc.*, 316 F.2d 695, 699 (2d Cir.), *cert. denied*, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963) ("we know that the mere existence of a parent-subsidiary relationship is not alone sufficient" to subject a foreign parent to jurisdiction if "the independence of the local subsidiary is a reality"); *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 124 (S.D.N.Y.1988) ("Some additional factor is required, such as direct and indirect control of the local company, treating the subsidiary as a mere department, or as an agent for the parent."); Restatement (Second) of Conflict of Laws § 52 comment b (1969). Plaintiffs have not charged that Drexel was an alter ego or agent of the foreign defendants. They cannot base their claim for jurisdiction over the person merely on the defendants' parentage of a corporation in this forum.

■ Two federal district courts have already found that LBA, GBL and Pargesa's total contacts with the United States are insufficient for the exercise of jurisdiction over the person based on continuous and systematic activities in the United States. *Cooperman v. Spiegel*, Nos. 89–6538, 89–7327, Amended Order (C.D.Cal. July 5, 1990); *In re MDC Holdings Securities Litigation*, 754 F.Supp. 785 (S.D.Cal.1990). In *MDC Holdings* the court found that:

Defendants have provided evidence that they do not have substantial activities in the United States.... Pargesa does not maintain a place of business, any employees, an interest in any property, a mail box, a telephone listing, or a bank account in the United States. Nor is Pargesa qualified to do business in the United States. Arnold van Zeeland ... submitted a similar declaration about LBA and GBL.... Plaintiffs' remaining arguments focus on the inter-relationship between the defendants and their various holdings, and the activities of the defendants' other American subsidiaries. The other subsidiaries are not defendants in this suit. These relationships do not show continuous or systematic activity by the parent companies.

754 F.Supp. at 793–94. Likewise in *Cooperman*, the court found that:

the plaintiffs have failed to make a prima facie showing of personal jurisdiction with regard to GBL and LBA. The evidence submitted by plaintiffs does not in any way demonstrate that these entities had the requisite minimum contacts with the United States.

Amended Order at 4. This Court also finds that GBL, Pargesa, SAIF, and LBA did not have " 'continuous and systematic' " contacts with the United States sufficient to satisfy the due process test for jurisdiction over the person on that ground. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–415, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984) (quoting *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952)).

■ Therefore, in order for this Court to exercise jurisdiction over the foreign defendants, the foreign defendants' alleged con-

tacts must satisfy the requirement that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). This requirement for the exercise of jurisdiction over the person was fleshed out by the Second Circuit in *Leasco,* which involved the issue of whether jurisdiction over the person could be exercised over certain English corporate and individual defendants for purposes of adjudicating claims of securities law violations. Quoting *Hanson v. Denckla,* Chief Judge Friendly stated in *Leasco* that:

it is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Amplifying this, the Restatement (Second) of Conflict of Laws, § 27, lists various bases for the exercise of judicial jurisdiction over an individual who is not present. Those relevant here are doing business in the state, § 35; doing an act in the state, § 36; and causing an effect in the state by an act done elsewhere, § 37. These principles apply likewise to corporations, § 47, 49, 50. All this reflects the modern notions that where a defendant has acted within a state or sufficiently caused consequences there, he may fairly be subjected to its judicial jurisdiction....

468 F.2d at 1340. Thus, the Court's inquiry must turn to whether the alleged contacts satisfy any of these bases for jurisdiction over the person.

The analysis begins with the "doing business in the [forum] state" and "doing an act in the [forum] state" bases for establishing "purposeful availment" of the forum sufficient to support the forum's exercise of jurisdiction. *Leasco,* 468 F.2d at 1340. Plaintiffs allege that GBL and Pargesa, through LBA and other subsidiaries such as Lambert Brussels Capital Corp., a Delaware corporation, "have maintained a substantial presence in the United States. This presence derives from a varie-

ty of U.S.-directed activities, including both actions that involved Drexel and activity wholly independent of Drexel." (Amended Complaint, ¶ 191). This presence, as detailed in the Amended Complaint, consists of the Delaware investment subsidiaries of GBL and Pargesa, (¶ 187, 191); LBA and its predecessor's investments in various United States industries and in real estate, (¶ 188, ¶ 199); the regular attendance by GBL and Pargesa representatives at board meetings in the United States, (¶ 194); and correspondence by van Zeeland, one of the representatives of the foreign defendants on the Drexel boards, from an address in the Chrysler Building in New York City under the letterhead of a subsidiary of GBL (¶ 197). The Amended Complaint alleges that Pargesa's 1987 Annual Report included a speech made by the head of Pargesa stating that the firm's "representation on the North American continent 'is already substantial.'" (¶ 200).

In determining whether the foreign defendants' contacts satisfy due process for jurisdiction over the person on these bases, only those contacts involving Drexel are relevant. The Amended Complaint states that "GBL and Pargesa affirmatively participated in the business of Drexel." (¶ 196). This alleged participation included the foreign defendants' alleged placement of junk bonds in Europe, purchase of warrants that were not available to other Drexel customers, consultations with Drexel on selected financings, and involvement in the Transcapital joint venture. Because these activities took place outside the forum, they do not satisfy the *Leasco* "doing business in the [forum] state" or "doing an act in the [forum] state" bases for jurisdiction over the person and they cannot be viewed as acts by which the defendants purposefully availed themselves of the privilege of conducting activities in this forum on those bases. See, *e.g., L'Europeenne,* 700 F.Supp. at 125 (finding that negotiations between the parties that occurred outside the United States could not constitute "'purposeful availment' by [the defendant] 'of the privilege of conducting activities within the' United States, by which [the

defendant] could be said to have invoked 'the benefits and protections of [the United States'] laws" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). The only alleged acts by any of the foreign defendants that took place in the forum are the correspondence from van Zeeland from an address in the Chrysler Building in New York City under the letterhead of a subsidiary of GBL, and the attendance of representatives of the foreign defendants at Drexel board meetings in New York. The correspondence and attendance at board meetings are not alone sufficient to establish the "doing business" or "doing an act" basis for jurisdiction over the person. Finally, the foreign defendants' alleged self-professed interest in active involvement in their United States investments, expressed in their annual reports, are not contacts at all.

Plaintiffs contend that the foreign defendants' activities satisfy the "purposeful availment" requirement because they caused consequences in the forum even though their activities took place outside of the forum. Plaintiffs contend that the foreign defendants' "overseas activities had substantial and negative effects on the United States economy and American investors." Specifically, they claim that the purchase of allegedly stripped warrants by Transcapital, the Drexel/GBL/Pargesa joint venture, "plainly had an adverse impact here, justifying this Court's exercise of jurisdiction."

In regard to this basis for jurisdiction over the person, the *Leasco* Court adopted the formulation of the Restatement (Second) of Conflicts § 37, which states that:

A state has the power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state makes the exercise of such jurisdiction unreasonable.

468 F.2d at 1341. The court noted, however, that "[t]his is a principle that must be applied with caution, particularly in the international context." *Id.* It further cautioned that "[t]he person sought to be charged [under this ground for jurisdiction] must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him." *Id.* The Second Circuit found that this stringent requirement was not satisfied in *Leasco.* *Id.*

On the other hand, in *S.E.C. v. Unifund SAL*, 910 F.2d 1028 (2d Cir.1990), the Second Circuit affirmed the exercise of jurisdiction over Unifund, an investment company based in Lebanon and incorporated under Lebanese law, on the ground that Unifund's acts outside the forum had "caused consequences" within the forum. In so finding, the Second Circuit stated that due process standards:

permit the exercise of jurisdiction over a defendant whose "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). One circumstance making such anticipation reasonable is where a defendant has acted in such a way as to have "caused consequences" in the forum state, *see Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d at 1340; *Restatement (Second) of Conflict of Laws* § 37 (1989).

Though not every causal connection between action abroad and ultimate injury to American investors will suffice, *see Bersch v. Drexel Firestone, Inc.*, 519 F.2d [974] at 1000 [ ( 2d Cir.1975) ] ("even assuming ... some causal relation ... the test for *in personam* jurisdiction is somewhat more demanding"), Unifund's transactions are alleged to have had a rather direct and an unmistakeably foreseeable effect within the United States. It is alleged to have traded, on the basis of inside information, options of a United States corporation listed exclusively on a United States stock exchange. That activity created the near certainty that United States shareholders, who could reasonably be expected to hold [the trad-

ed] securities, would be adversely affected.

910 F.2d 1028, 1033 (2d Cir.1990). The court noted however, that its holding was heavily based on the insider trading facts of the *Unifund* case. It stated that:

> Not every securities law violation involving shares of a United States corporation will have the requisite effect within the United States. Insider trading, however, has serious effects that can reasonably be expected to be visited upon United States shareholders where, as here, the securities are those of a United States company traded exclusively on a United States exchange.

*Id.* The Court distinguished *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974 (1975), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), in which the Second Circuit found that the causal connection between misrepresentations by a Canadian investment house that underwrote an offering of a foreign company's shares which were not intended to be sold to United States investors, and the alleged injuries to United States residents or citizens who did invest, was too attenuated to satisfy the "causing consequences" test enunciated in *Leasco* and in the Restatement because the injuries in the United States were not sufficiently foreseeable.

██ The "causing consequences" basis for exercising jurisdiction over foreign defendants was also applied in a number of recent Southern District cases. These cases involved defendants who were alleged to have made false or misleading statements that affected the price of securities sold in the United States. See *Perez–Rubio v. Wyckoff,* 718 F.Supp. 217, 229–31 (S.D.N.Y.1989); *Landry v. Price Waterhouse Chartered Accountants,* 715 F.Supp. 98, 100–102 (S.D.N.Y.1989); *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241 (S.D.N.Y.1984). In *Reingold,* for example, the court found that the foreseeability requirement of the "causing consequences" basis for jurisdiction was met as to an Australian accounting firm that allegedly made misrepresentations in an audit of an Australian firm that the accountants knew would be incorporated in an annual report of the firm and in a United States securities filing. The court found that the Australian accountants "could reasonably be expected to be haled into court" in the United States for misrepresentations made in an SEC filing and that therefore assertion of jurisdiction in a court of the United States was not unreasonable. 599 F.Supp. at 1259–60.

On the other hand, the "causing consequences" basis for exercising jurisdiction over the person was found inapplicable in *Huang v. Sentinel Government Securities,* 657 F.Supp. 485, 488–89 (S.D.N.Y. 1987), which involved a parent-subsidiary relationship. Plaintiffs claimed that the parent, an English private investment holding company, and its subsidiary, a trading house located in New York, prepared and distributed false or misleading trade confirmations to allow one of the subsidiaries' clients to report tax losses. In regard to the "causing consequences" ground for jurisdiction over the person, the court noted that "[w]ith respect to effects in the forum caused by acts done elsewhere, 'the test for *in personam* jurisdiction is somewhat more demanding' than just 'some causal relation.'" *Id.* at 489 (citing *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 1000 (2d Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975)).

In the instant case there is no close causal relationship between the foreign defendants' alleged acts and plaintiffs' cause of action. The foreign defendants' placement of junk bonds in Europe and other foreign business dealings with Drexel do not indicate that the foreign defendants had the kind of control over Drexel that is required to establish control person liability under the securities laws. Nor do they indicate that the foreign defendants were involved in an anticompetitive conspiracy with Drexel in violation of the antitrust laws.

In addition, the foreseeability element of the "causing consequences" basis for jurisdiction is absent. The alleged activities by the foreign defendants outside the United States are the foreign defendants' placement of junk bonds in Europe, consulta-

tions with Drexel on selected financings, and involvement in the Transcapital joint venture's purchase of warrants that were not available to other Drexel customers. With the exception of Transcapital's purchase of allegedly stripped warrants, plaintiffs' brief does not indicate how any of these activities had effects in the United States. The allegations involving Transcapital are insufficient to allege "causing consequences" jurisdiction because Transcapital is not a defendant in this action and Transcapital is not alleged to have been involved in any way in the allegedly unlawful stripping of the warrants but rather was simply the purchaser of the warrants after they were stripped. The placement of junk bonds in Europe affected European investors; any effects on American investors must be viewed by the Court as insufficiently foreseeable, in the absence of any explanation by plaintiffs to the contrary. Plaintiffs have not indicated how the foreign defendants' alleged consultation on selected financings affected any United States entities.

The fact that the foreign defendants derived substantial profits from their investments in Drexel stock does not improve plaintiffs' deficient claim for jurisdiction over the person of the foreign defendants.

The parties' debate in their briefs regarding whether or not culpable participation is an element of a *prima facie* case of control person liability under the securities laws is not germane to the issue of personal jurisdiction and need not be addressed in this decision.

Accordingly, the federal claims are dismissed without prejudice as to the foreign defendants, *viz.*: Lambert Brussels Corporation Limited Partnership ("LBA"), Groupe Bruxelles Lambert S.A. ("GBL"), SAIF Investments B.V. ("SAIF"), and Pargesa Netherlands B.V. ("Pargesa"). In the absence of federal jurisdiction over the foreign defendants, the pendent state-created claims asserted in the Amended Complaint are likewise dismissed without prejudice.

The Court having determined that there is no just cause for delay, expressly directs entry of judgment of dismissal of the claims as to said defendants in accordance with Rule 54(b), Federal Rules of Civil Procedure, without prejudice.