Steven **SINGER** and Dulce Reyes Singer, Plaintiffs,

v.

Emily Singer **BELL**; Michael Bell; Sheldon M. Liebowitz; Liebowitz, Liebowitz and Clark, Esqs., A Partnership; Ron Bellistri; Gary "Doe"; "Richard Roe"; "John Doe # 1"; "John Doe # 2"; and the Sheriff's Department of Bergen County, New Jersey, Defendants.

No. 83 Civ. 5765 (EW).

United States District Court, S.D. New York.

Dec. 21, 1984.

Eagle & Fein P.C., New York City, for plaintiffs; Patrick J. Carr, New York City, of counsel.

McGovern, Bombara & Claire, New York City, for defendants John Doe # 1, John Doe # 2, and the Sheriff's Dept. of Bergen County, N.J.; Charles E. O'Bryan, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This case has its origin in a decree of divorce entered in the Superior Court of New Jersey in November 1972 which directed plaintiff, Steven Singer ("Singer"), to pay his divorced wife, Emily Singer Bell, one of the defendants herein, support for the benefit of their three children. Upon his default in payments due over a substantial period, which totalled in excess of $48,000 by 1980, his former wife applied for and was granted a warrant for his arrest by the Honorable Harvey Sorkow, Judge of the Superior Court of New Jersey. There is no issue that the warrant was properly issued. Subsequently, Singer was arrested in the State of New Jersey and after a hearing before Judge Sorkow was released upon a finding, based upon a stipulation by his former wife, that she had lured him into New Jersey to effect execution of the warrant.

Thereafter plaintiff commenced this action against his former wife and her current husband, Michael Bell; the attorneys who represented her in the New Jersey action; Ron Bellistri, Gary "Doe," and "Richard Roe"; and "John Doe # 1," "John Doe # 2," and the Sheriff's Department of Bergen County, New Jersey.

In general, Singer alleges that after the warrant was issued, defendant Ron Bellistri contacted Singer about a possible business opportunity and invited him to a meeting in Weehawken, New Jersey to discuss the transaction. Bellistri and defendant Gary Doe then allegedly met Singer in New York, following which defendant Richard Roe drove Singer, Bellistri, and Gary Doe to New Jersey for the purported meeting. Upon their arrival at the meeting place in Weehawken, Singer further alleges, he was met by John Doe # 1 and John Doe # 2 who stated they were deputies of the Bergen County Sheriff's Department and then arrested and searched him. Singer was jailed overnight but released by Judge Sorkow the next morning after Emily Singer Bell admitted that she had lured her former husband into New Jersey.[1]

Singer, and his present wife Dulce Reyes Singer, a co-plaintiff, allege that defendants' conduct subjected him to an unreasonable search and seizure, in violation of the Fourth and Fourteenth Amendments to the United States Constitution; deprived him of life, liberty, and property without due process, in violation of the Fifth and Fourteenth Amendments; and denied him equal protection of the laws, in violation of the Fourteenth Amendment. They allege that the defendants conspired so to deprive plaintiffs of their civil rights, in violation of 42 U.S.C. § 1985, and that they acted under color of state law in depriving plaintiffs of their civil rights, in violation of 42 U.S.C. § 1983. Singer seeks compensatory and punitive damages, and his wife seeks compensatory damages for emotional distress and loss of consortium.

Heretofore the attorneys who were named as defendants moved to dismiss the complaint against them upon the grounds that they were not subject to personal jurisdiction in the State of New York because (1) they do no business in New York and had no contacts within this state with respect to the action and (2) none of them participated in luring Singer into New Jersey or even learned of the alleged scheme until after Singer's arrest. Plaintiff opposed the motion, arguing that the attorneys were subject to jurisdiction under New York Civ.Prac.Law § 302(a)(2) or (3)

---

1. In releasing Singer, Judge Sorkow stated that "rather a defaulting and absconding debtor be free than this court become a party to participa-tion in a scheme based on 'dirty tricks[.]'" *Singer v. Singer,* No. M–10581–72, slip op. at 2–3 (N.J.Super.Ct.Ch.Div. Aug. 11, 1982).

because they conspired with defendants Bellistri, Gary Doe, and Richard Roe, who allegedly committed acts in furtherance of the conspiracy in New York. Familiarity is assumed with this Court's opinion which granted the attorneys' motion to dismiss the action against them for lack of personal jurisdiction.[2]

The instant motion is by the defendants John Doe # 1, John Doe # 2, and the Sheriff's Department of Bergen County, New Jersey (the "Sheriff defendants") to dismiss the action against them on the grounds that they are residents of New Jersey, conduct their business within that state, and are not subject to service of process in New Jersey so as to render them subject to the jurisdiction of this Court. The motion is supported by the affidavit of Allen Gonzalez who states he is "one of the defendants in the above entitled action" (it is clear from his affidavit that he is either John Doe # 1 or John Doe # 2). He states that he is employed by the County of Bergen as an investigator for the Bergen County Sheriff's Department; that prior to August 10, 1982 that office received a warrant for the arrest of plaintiff Steven Singer from the attorneys who represented Singer's former wife and which had previously been issued by the Superior Court of New Jersey; and that on August 10, 1982 the Sheriff's office was informed by Michael Bell that plaintiff would be coming into the State of New Jersey and arriving in a silver limousine at the Silver Fox Restaurant in Weekawken at about 12:30 p.m. on that day. Gonzalez further states that

> [u]pon arriving at the aforementioned address, we were met by Mr. Bell who brought along a picture of the plaintiff and pointed him out to us. Mr. Singer was then arrested. The arrest was in accordance with the standard practice and procedures of the Bergen County Sheriff's Department.

> At no point prior to August 10, 1982 did I or any other officer of this Department engage in any conversations with either Emily Bell or Michael Bell regarding Steven Singer.

> The normal procedures and daily practices of this office do not entail any contact with the State of New York apart from standard extradition proceedings and the like.[3]

Plaintiffs oppose the motion on the ground that the movants were engaged in the conspiracy charged in the complaint. Plaintiffs do not claim, nor do they offer any proof, that either John Doe # 1 or John Doe # 2, or any other member of the Sheriff's Department, was present in New York or personally committed any act in New York in furtherance of the alleged conspiracy. What they rely upon are the acts and conduct of the defendants Bellistri, Gary Doe, and Richard Roe, named as members of the conspiracy, who allegedly committed acts in New York that falsely induced Singer to go with them to New Jersey to consummate a transaction there, whereupon he was arrested under the circumstances referred to above. Thus, the acts attributed to Bellistri, Gary Doe, and Richard Roe are the meeting with Singer in New York where they discussed the fictitious deal and arranged to transport him to New Jersey. In the absence of any act or conduct by the Sheriff defendants in New York State, plaintiffs

> allege a conspiracy or agency theory of jurisdiction with respect to the Sheriff of Bergen County. If we presume the connection, concert or conspiracy for substantive purposes among the Sheriff, the arresting uniformed deputies in Weehawken and the persons (Bellistri and Roe) acting in New York State to deliver Singer to Weehawken, the jurisdictional requirements of the New York long-arm statute are satisfied in two respects. CPLR 302 provides for jurisdiction of out-of-state defendants who transact any business in New York (CPLR § 302(a)(1)), and who commit tortious

---

**2.** *Singer v. Bell,* 585 F.Supp. 300 (S.D.N.Y.1984).

**3.** Gonzalez aff., at ¶¶ 5–7.

conduct in New York (CPLR § 302(a)(2)).[4]

However, for plaintiffs to "presume the connection, concert or conspiracy" to include the Sheriff defendants is a quantum leap forward that assumes the very fact to be established, without the slightest evidential support of any fact which permits an inference that, assuming the existence of the conspiracy as alleged, the Sheriff defendants were knowing participants. This Court "is fully aware that conspiracies are rarely established by direct evidence; that usually they are spelled out by independent circumstantial evidence and the reasonable inferences to be drawn therefrom. However, there must be a fact basis upon which the sought-for inferences of conspiracy and knowing participation therein must rest."[5]

As this Court noted in dismissing plaintiffs' complaint against the attorneys who were named as defendants,

> [i]t is well established that "the acts of a co-conspirator may be attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant." However, "the bland assertion of conspiracy or agency is insufficient to establish jurisdiction." Instead, plaintiffs must make a *prima facie* showing of conspiracy. They must allege specific facts warranting the inference that the defendants were members of the conspiracy, and "come forward with some definite evidentiary facts to connect the defendant[s] with transactions occurring in New York."[6]

Here plaintiffs have failed to set forth some evidentiary fact to sustain their claim of jurisdiction, as to which they have the burden of proof.[7] Plaintiffs' conjectural projections and broadside *ad hominem* attack on the Sheriff and other law enforcement officers are no substitute for proving the threshold requirement that jurisdiction exists. The failure to set forth a single evidentiary fact upon which an inference of knowing attachment to a conspiracy by the Sheriff defendants can reasonably be drawn is highlighted by the fact that, although this action has been pending for more than a year and plaintiffs' complaint against the attorneys was dismissed more than eight months ago, during which plaintiffs were fully aware of the factual shortcomings of their claim against the Sheriff defendants, they failed to depose the Sheriff defendants or other persons on the issue.

The motion of the Sheriff defendants to dismiss the action against them for lack of in personam jurisdiction is granted.

So ordered.

---

**4.** Plaintiffs' Memorandum of Law at 2; *see* N.Y. Civ.Prac.Law § 302(a)(1)(2) (McKinneys 1972 & Supp.1983).

**5.** *Miller v. Schweikart,* 413 F.Supp. 1062, 1065 (S.D.N.Y.1976) (citing *United States v. Kahaner,* 203 F.Supp. 78, 84 (S.D.N.Y.1962); *Morgan v. Sylvester,* 125 F.Supp. 380, 389 (S.D.N.Y.1954), *aff'd,* 220 F.2d 758 (2d Cir.), *cert. denied,* 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955)).

**6.** *Singer,* slip op. at 3–4 (quoting various cases; footnotes omitted).

**7.** *See Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir.1981); *Raskin v. Compania de Vapores Realma, S.P.,* 521 F.Supp. 337, 339 (S.D.N.Y.1981).