AAACON AUTO TRANSPORT,
INC., Plaintiff,

v.

Harold Dean BARNES and Barnes
Used Cars, Inc., Defendant.

No. 84 Civ. 5310(EW).

United States District Court,
S.D. New York.

March 14, 1985.

Zola & Zola, New York City (Ralph J. Zola, New York City, of counsel), for plaintiff.

Baskin & Steingut, P.C., New York City (Lawrence A. Mandelker, Mark J. Morgenstern, New York City, of counsel), for defendant.

OPINION

EDWARD WEINFELD, District Judge.

In its amended complaint, the plaintiff, Aaacon Auto Transport, Inc. ("Aaacon"), asserts eight causes of action against the defendants, Harold Dean Barnes and Barnes Used Cars (collectively "Barnes"). The first three causes of action involve an agreement whereby Barnes, who is based in the Washington, D.C. area, allegedly transported over 600 automobiles for Aaacon between the latter's facilities in New York City, where it is located, and its terminals in Florida. Barnes began transporting automobiles in February 1983 and continued to do so during the year and into 1984. In essence, Aaacon claims that on numerous occasions Barnes failed to deliver the automobiles in the condition in which he received them. The fourth through seventh causes of action involve Barnes's sale to Aaacon of an allegedly defective tractor and trailer, and the eighth cause of action is based upon an alleged slanderous statement by Barnes that Aaacon owes defendants $50,000. The action is before the Court on cross-motions relating to arbitration of Aaacon's claims arising from the

transportation agreement and on Barnes's motion to dismiss the remaining five causes of action for lack of in personam jurisdiction.[1]

In February 1983, the parties entered into a written contract setting forth the terms of the transportation agreement. Under that contract, "Barnes agree[d] to provide said transportation for a minimum of 600 automobiles between New York and Florida during the period from February 20, 1983 to June 30, 1983." The contract contains an arbitration clause, which provides that "the parties consent to arbitration before the American Arbitration Association ["AAA"], pursuant to its rules, of any dispute that may arise between them." Sometime after the expiration of the three month period specified in the contract, Aaacon presented Barnes with a proposed new contract setting forth a new period and minimum number of automobiles to be transported. Apparently, however, Barnes did not sign it because he believed the initial contract was still in effect and a new one unnecessary, and he continued to transport automobiles for Aaacon pursuant to the terms of the initial contract. Thereafter, disputes arose over various aspects of the transportation agreement and, in July 1984, Aaacon commenced this action. One month later, Barnes made a demand for arbitration of his own claims before the AAA in Washington, D.C., which, upon Aaacon's request that the hearings be held in New York City, determined that Maryland is the appropriate locale. Barnes now moves pursuant to 9 U.S.C. § 3 to stay action on all claims arising from the transportation agreement pending arbitration in Maryland, and Aaacon cross-moves pursuant to 9 U.S.C. § 4 to compel arbitration of these claims in New York City instead of Maryland.

Both parties are prepared to arbitrate claims arising from the transportation agreement but disagree whether all such claims are arbitrable. Aaacon argues that the parties' only written arbitration agreement terminated on June 30, 1983, when the three month period ended, and that claims arising from shipments Aaacon made after that date are not covered by any written agreement and therefore are not arbitrable. Barnes, in opposition, claims that the three month period was intended merely as a performance factor and not as a limitation on the parties' contractual relationship, which was expressly made subject to termination by either party upon thirty days notice and was otherwise intended to be of continued duration unless so terminated. Thus, Barnes desires arbitration of all claims arising from shipments made by Aaacon, whereas Aaacon desires arbitration only of claims arising from shipments it made on or before June 30, 1983.

■ At issue here is not the existence but the duration of the parties' written arbitration agreement. While the former issue is for Court determination, the latter issue should be resolved by the arbitrator, provided the arbitration clause is broad and arguably covers disputes concerning contract termination.[2] As already noted, the parties agreed in writing to arbitrate "any dispute that may arise between them." A broader arbitration clause is hard to imagine. Since this clause arguably covers the parties' dispute over contract termination—that is, whether claims arising from shipments made after June 30, 1983 are arbitrable—that dispute is referable to arbitration.[3] Accordingly, Barnes's motion pursuant to 9 U.S.C. § 3 to stay the instant action is granted with respect to all claims arising from the transportation agreement

---

**1.** Barnes also moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the eighth, or slander, cause of action for failure to state a claim upon which relief can be granted. Since Barnes's motion to dismiss the fourth through eighth causes of action on jurisdictional grounds is granted, this additional ground for dismissal need not be addressed.

**2.** *See Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63–64 (2d Cir.1983); *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir.1980); *Rochdale Village, Inc. v. Public Serv. Employees Union, Local No. 80*, 605 F.2d 1290, 1294–95 (2d Cir.1979).

**3.** *See Rochdale Village*, 605 F.2d at 1195.

pending determination of the termination issue by the arbitrator.

■ The parties also disagree about where arbitration proceedings should be held. Although the AAA has determined that they should be held in Maryland, Aaacon cross-moves pursuant to 9 U.S.C. § 4 to compel arbitration in New York City. The same reasons why the parties' dispute over contract termination should be resolved by the arbitrator apply to this dispute about venue. In any case, Aaacon is not entitled under section four to an order compelling arbitration in New York City or anywhere else because Aaacon is not, as it must be to invoke section four, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." Barnes has not failed, neglected, or refused to arbitrate. On the contrary, he has already made a demand for arbitration of his own claims before the AAA and now moves to stay this action so that all claims arising from the transportation agreement may be arbitrated together in Maryland, which the AAA has determined is the appropriate locale for the hearings. The arbitration clause states that proceedings thereunder are to be held before the AAA "pursuant to its rules." There is no allegation that Barnes has breached this provision; indeed, on the contrary, he has invoked the arbitral procedure, as already noted. Accordingly, Aaacon is not a "party aggrieved" within the meaning of 9 U.S.C. § 4 and its cross-motion to compel arbitration in New York City is denied.[4]

■ Barnes also moves pursuant to Fed. R.Civ.P. 12(b)(2) to dismiss the remaining five causes of action upon the ground that the Court lacks in personam jurisdiction. Four of these causes of action arise from Barnes's sale of an allegedly defective tractor and trailer to Aaacon on April 23, 1984 and the fifth arises from a slanderous statement Barnes allegedly made about Aaacon. Barnes asserts, and Aaacon does not dispute, that the sale transaction was negotiated and executed in Maryland; there is no allegation by either party as to where the allegedly slanderous statement was made. Since Aaacon has failed to allege that these events occurred in New York State, New York's long arm statute confers no personal jurisdiction over Barnes with respect to claims arising from the sale transaction unless that sale constituted a "tortious act without the state causing injury to person or property within the state," and none at all with respect to the slander claim.[5] As to the former, even assuming that Barnes's sale of the tractor and trailer was fraudulent, as Aaacon claims, and therefore was a "tortious act without the state," there is no allegation that Aaacon sustained "injury to person or property within the state." With respect to commercial torts, the situs of injury is usually "the place where the critical events took place."[6] Here, the only allegation concerning the "critical events" is that the sale was negotiated and executed in Maryland. There is no indication whether Barnes's allegedly fraudulent representations concerning the tractor and trailer were made to Aaacon in New York or whether Aaacon relied upon them in New

4. *Cf. Koreska v. Perry-Sherwood Corp.*, 253 F.Supp. 830, 832 (S.D.N.Y.1965) (Court cannot compel arbitration anywhere when parties have already submitted to arbitration in accordance with terms of contract), *aff'd*, 360 F.2d 212 (2d Cir.1966) (mem.); *A/S Ganger Rolf v. Zeeland Transp., Ltd.*, 191 F.Supp. 359, 362–63 (S.D.N.Y. 1961) (since contract permitted petitioner to proceed with arbitration without respondent's cooperation, petitioner was not "party aggrieved" and 9 U.S.C. § 4 did not apply).

5. N.Y.Civ.Prac.Law § 302(a)(3) (McKinneys 1972).

6. *See American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 433 (2d Cir.1971) (quoting *Spectacular Promotions, Inc. v. Radio Station WING*, 272 F.Supp. 734, 737 (E.D.N.Y.1967)); *MIJE Assocs. v. Halliburton Servs.*, 552 F.Supp. 418, 420 (S.D.N.Y.1982) (same); *Data Communication, Inc. v. Dirmeyer*, 514 F.Supp. 26, 30 (E.D.N.Y.1981) (same); *Louis Marx & Co. v. Fuji Seiko Co.*, 453 F.Supp. 385, 388 n. 4 (S.D.N.Y.1978) (same).

York.[7] Nor is there any allegation that Aaacon lost business in New York as a result of the alleged fraud.[8] In short, Aaacon has failed to allege that it sustained injury in New York for any reason other than that it happens to be domiciled here and incurred a financial loss. Such a reason is no basis for in personam jurisdiction over a nonresident defendant under section 302(a)(3) of the long arm statute.[9]

Aaacon asserts that the Court has in personam jurisdiction over Barnes pursuant to CPLR § 301.[10] That section confers jurisdiction over a foreign defendant who is " 'engaged in such a continuous and systematic course of "doing business" [in New York] as to warrant a finding of its "presence" in this jurisdiction.' "[11] Aaacon claims that Barnes was "doing business" in New York in that, pursuant to the transportation arrangement, the written portion of which was executed in the state, Barnes used his own trucking equipment and his own employees to load or unload over 500 automobiles in New York on a regular, continuing basis during the period at issue, entering the state on at least 100 occasions, for which he earned revenues in excess of $125,000. Aaacon further asserts that on those occasions when the shipments originated in Florida and terminated in New York, Barnes's employees solicited return loads from other shippers in "the New

York area" in order to avoid an empty "back haul." Barnes counters that he conducts his business in Maryland and has not maintained an office, equipment, bank accounts, records, or garage facilities in New York, has no employees and rents no equipment in New York, and solicits no business in the state. According to Barnes, his sole business activity in New York was to deliver and pick up automobiles at Aaacon's facility in New York for transport pursuant to his arrangement with Aaacon.

It is a close question whether frequent but temporary entry into New York solely to load and unload automobiles at another's facilities for purposes of transporting them to and from points outside the state renders one "present" in New York, " 'not occasionally or casually, but with a fair measure of permanence and continuity' " so that it is reasonable and just that one be required to defend an unrelated action in New York.[12] If Barnes's employees also solicited business when they were in New York in order to avoid empty back hauls to Florida, then the argument for personal jurisdiction is stronger.[13] However, on the pleadings and affidavits before the Court, there is no indication of how frequently Barnes's employees came to New York, how long they stayed when they were here, or precisely what they did when they were here. Nor has Aaacon described in any

7. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899–900 (2d Cir.1980); *MIJE Assocs.*, 552 F.Supp. at 420 n. 5; *Marine Midland Bank v. Keplinger & Assocs., Inc.*, 488 F.Supp. 699, 703 (S.D.N.Y.1980).

8. *See Trafalgar Capital Corp. v. Oil Producers Equip. Corp.*, 555 F.Supp. 305, 312–13 (S.D.N.Y. 1983); *Sales Arm, Inc. v. Automobile Club*, 402 F.Supp. 763, 766 (S.D.N.Y.1975); *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 206, 385 N.E.2d 1055, 1059, 413 N.Y.S.2d 127, 132 (1978).

9. *See American Eutectic*, 439 F.2d at 433–34; *MIJE Assocs.*, 552 F.Supp. at 420; *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326–27, 402 N.E.2d 122, 126, 425 N.Y.S.2d 783, 787 (1980).

10. N.Y.Civ.Prac.Law § 301 (McKinneys 1972).

11. *McGowan v. Smith*, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981) (quoting *Simonson v. International Bank*, 14

N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y. S.2d 433, 436 (1964)).

12. *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 458 (1982) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 268, 115 N.E. 915, 917 (1917)).

13. *See id.* at 310, 434 N.E.2d at 694–95, 449 N.Y.S.2d at 459; *compare Scanapico v. Richmond, Fredericksburg & Potomac R.*, 439 F.2d 17 (2d Cir.1970), *aff'd on rehearing*, 439 F.2d 25 (2d Cir.1970) (en banc) (nonresident railroad "doing business" in New York due to in-state freight solicitation by two employees, one a New York resident; in-state sale by connecting railroads of tickets for through-trains operated to and from New York over defendant's tracks; and daily presence of defendant's freight cars in New York as part of interstate trains operated by others).

detail the nature and extent of the solicitation activity in which Barnes's employees allegedly engaged when in "the New York area." This allegation is made on "information and belief" and is denied by Barnes. The issue here is whether Aaacon has discharged its burden of alleging a factual predicate for in personam jurisdiction.[14] Although on this motion Aaacon is required to make only a prima facie case for personal jurisdiction, the lack of detail and conclusory nature of its allegations raise doubts about their sufficiency. Aaacon has had ample time for discovery—Barnes filed his motion more than four months after the date of the amended complaint—and might have supported its position with a stronger factual affidavit.

Whether or not Aaacon has sufficiently alleged facts that show Barnes was "doing business" in New York need not be decided. For in any case, Aaacon has failed to allege, as it must, that Barnes was "doing business" in New York at the time the action was commenced on July 26, 1984.[15] According to the amended complaint, the parties' written transportation agreement terminated prior to September 1983, whereupon Barnes rejected a proposed contract for the period up to February 28, 1984 but continued to do business with Aaacon on the same terms as those in the expired contract. How long the parties continued to do business in this manner is not stated in the amended complaint or in Aaacon's affidavit and brief in opposition to the instant motion. Indeed, in its affidavit, Aaacon refers to the automobile shipments Barnes made as falling into two periods, the later of which ended on February 28, 1984. The only indication that Barnes's loading and unloading activities in New York may have continued beyond that date is a reference by Barnes to money alleged-

ly owed to him by Aaacon for services he rendered "pursuant to the Contract" in March, April, May, and June of 1984. Absent any allegation that Barnes maintained his contacts with New York on July 26, 1984, when this action was commenced, Aaacon has failed to discharge its burden on the jurisdictional issue. Accordingly, Barnes's motion to dismiss the fourth through eighth causes of action is granted.

So ordered.

---

14. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir. 1984); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *Visual Sciences, Inc. v. Integrated Communications Inc.,* 660 F.2d 56, 58 (2d Cir.1981); *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *Singer v. Bell,* 599 F.Supp. 350, 353 (S.D.N.Y.1984).

15. *See Arrow Trading Co. v. Sanyei Corp.* (Hong Kong), Ltd., 576 F.Supp. 67, 69 (S.D.N.Y.1983); *Puerto Rico Maritime Shipping Auth. v. Almogy,* 510 F.Supp. 873, 878 (S.D.N.Y.1981); *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa,* 428 F.Supp. 1237, 1246 n. 12 (S.D.N.Y.1977); *Gaboury v. Central Vermont Ry.,* 250 N.Y. 233, 165 N.E. 275 (1929).