**ALLSTATE LIFE INSURANCE CO., Ariel Capital II L.P., Ariel Fund Ltd., Carmel Fund Ltd., Carmel Partners L.P., Colonial Diversified Income Fund, D & P CBO Partners L.P., Executive Life Insurance Co., Ithaca Partners L.P., Life Insurance Co. of the Southwest, Mt. Tavor Partners L.P., Prospect Street High Income Portfolio Inc., Prospect International High Income Portfolio N.V., United High Income Fund Inc., and United High Income Fund II Inc., Plaintiffs,**

v.

**LINTER GROUP LIMITED, Linter Textiles Corporation Limited, Lindsay Phillip Maxsted, Receiver and Manager of Linter Group Limited and Linter Textiles Corporation Limited, John Beresford Harkness, Receiver and Manager of Linter Group Limited and Linter Textiles Corporation Limited, Abraham Goldberg, Commonwealth Bank of Australia, Bank of New Zealand, Sumitomo International Finance Australia,**

**Chase AMP Bank Limited, State Bank of South Australia, Security Pacific Australia Limited, Australia and New Zealand Banking Group Limited, and Westpac Banking Corporation, Defendants.**

No. 91 Civ. 2873 (RPP).

United States District Court, S.D. New York.

Jan. 9, 1992.

Silverman, Harnes & Obstfeld, New York City by Sidney S. Silverman, Harold B. Obstfeld, John F. Harnes, for plaintiffs.

Boulanger, Finley & Hicks, P.C., New York City by J. Portis Hicks, for defendant Bank of New Zealand.

Davis Polk & Wardwell, New York City by Steven F. Goldstone, Bradley J. Butwin, for defendants Australia and New Zealand Banking Group Ltd., Commonwealth Bank of Australia, State Bank of South Australia, Sumitomo Intern. Finance Australia Ltd. and Westpac.

Fried, Frank, Harris, Shriver & Jacobson, New York City by Pamela Jarvis, John Sullivan, for defendant Security Pacific Australia Ltd.

Milbank, Tweed, Hadley & McCloy, New York City by George Brandon, for defendant Chase AMP Bank Ltd.

Simpson, Thacher & Bartlett, New York City by Michael J. Chepiga, John C. Gustafsson, for defendant Barclays Bank Australia.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action for damages alleging violations of the federal securities laws. Four of the defendant banks move individually to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), and all of the defendant banks move jointly to dismiss the Complaint on grounds of *forum non conveniens* pursuant to Fed.R.Civ.P. 12(b). For the reasons set forth below, all of the motions are denied.

## BACKGROUND

### I. THE PARTIES

Plaintiffs are: Allstate Life Insurance Company, an Illinois corporation with its principal place of business in Illinois; Ariel Capital II L.P., a Delaware corporation with its principal place of business in New York; Ariel Fund Limited, a Cayman Island exempt corporation with its principal place of business in New York; Carmel Fund Limited, a Cayman Island exempt corporation with its principal place of business in New York; Carmel Partners L.P., a Delaware corporation with its principal place of business in New York; Colonial Diversified Income Fund, a Massachusetts corporation with its principal place of business in Massachusetts; D & P CBO Partners L.P., a Delaware limited partnership with its principal place of business in Illinois; Executive Life Insurance Company, a California corporation with its principal place of business in California; Ithaca Partners L.P., a Delaware Limited Partnership with its principal place of business in

New York; Life Insurance Company of the Southwest, a Texas corporation with its principal place of business in Texas; Mt. Tavor Partners L.P., a Delaware limited partnership with its principal place of business in New York; Prospect Street High Income Portfolio Inc., a Massachusetts corporation with its principal place of business in Massachusetts; Prospect International High Income Portfolio N.V., a Netherlands Antilles corporation with its principal place of business in Massachusetts; United High Income Fund Inc., a Maryland corporation with its principal place of business in Kansas; and United High Income Fund II Inc., a Maryland corporation with its principal place of business in Kansas.

Defendant Linter Group Limited ("Linter Group") is a limited company incorporated under the laws of New South Wales, Australia. Defendant Linter Textiles Corporation Limited ("Linter Textiles"), a wholly-owned subsidiary of Linter Group, is a limited company incorporated under the laws of New South Wales, Australia. At all relevant times, Linter Textiles was a holding company whose subsidiaries were engaged in various aspects of textile and apparel manufacturing business. Defendants Lindsay Phillip Maxsted and John Beresford Harkness were appointed on January 26, 1990 by the Supreme Court of Victoria at Melbourne as receivers and managers of Linter Group and Linter Textiles. Defendant Abraham Goldberg at all relevant times prior to 1990 served as a director and chief executive officer of Linter Group and Linter Textiles. Complaint ¶ 4.

The following banks (collectively referred to as the "Bank Defendants") are also defendants in this action: Commonwealth Bank of Australia, Bank of New Zealand, Sumitomo International Finance Australia Limited ("Sumitomo"), Chase AMP Bank Limited ("Chase AMP"), Barclays Bank Australia Limited ("Barclays Australia"), State Bank of South Australia, Security Pacific Australia Limited ("Security Pacific"), Australia and New Zealand

Banking Group, and Westpac Banking Corporation.

## II. FACTUAL BACKGROUND

Plaintiffs seek recovery for injuries allegedly sustained as a result of fraud committed in connection with the sale of Linter Textiles subordinated debentures by Drexel Burnham Lambert, Inc. ("Drexel") as underwriter. The Complaint alleges the following facts.

On October 7, 1988 Linter Textiles filed an amended registration statement with the Securities and Exchange Commission ("SEC") regarding the issuance of approximately $200 million principal amount of its 13¾% Senior Subordinated Debentures, due October 1, 2000 (the "Debentures"). A prospectus dated October 6, 1988 (the "Prospectus") was included in the registration statement and disseminated to the public. The Debentures were delivered against payment on or about October 13, 1988 and bore interest from that date. Complaint ¶ 6. Plaintiffs or their predecessors in interest purchased Debentures in reliance on the representations contained in the Prospectus. Complaint ¶ 8.

The Prospectus represented that following the public offering, aside from the Debentures, Linter Textiles and its subsidiaries would be relatively free of long-term debt. The Prospectus stated that Linter Textiles would use the proceeds of the sale of the Debentures to retire $A239 million [1] of the then existing $A606 million of long-term debt and to convert $A353 million of the long-term debt into equity, leaving Linter Textiles with only $A14 million of long-term debt. The Prospectus also stated that Linter Textiles expected to arrange $A50 million of bank credit for working capital and $A75 million bank facilities for capital expenditures, and if such funds were provided by Linter Group, Linter Textiles might guarantee the debt incurred by Linter Group to obtain those funds. Complaint ¶ 6.

Plaintiffs allege that the representations in the Prospectus were materially false and misleading in that the Prospectus failed to

1. "$A" is used herein to signify Australian dollars.

disclose the following material facts. As of October 6, 1988, pursuant to various agreements (the "Original Guaranties"), several subsidiaries of Linter Textiles (the "Subsidiaries")[2] had guaranteed hundreds of millions of dollars of Linter Group's debt to the Bank Defendants (the "Linter Group Debt"). On October 12, 1988, the day before the delivery of the Debentures, Linter Group, the Subsidiaries, and each of the Bank Defendants executed identical agreements which released the Subsidiaries from the Original Guaranties (the "Releases"). However, at the time the Releases were executed, it was agreed that shortly thereafter Linter Textiles would guaranty the Linter Group Debt to the Bank Defendants under agreements among Linter Group, Linter Textiles, and each of the Bank Defendants. These agreements (the "Linter Textiles Guaranties") are alleged to have been executed between October 26 and November 4, 1988. Complaint ¶ 7.

Plaintiffs also allege that at the time the Releases were executed, it was agreed that between October 27 and November 18, 1988, the Subsidiaries would execute identical agreements which guaranteed the Linter Group Debt. These identical agreements (the "Subsidiaries New Guaranties") are alleged to have been executed between October 27 and November 18, 1988. Complaint ¶ 7.

Plaintiffs allege that the foregoing facts constitute a fraudulent scheme by the various defendants to induce the purchase of the Debentures. Complaint ¶ 10. They charge that the Bank Defendants knew that the Debentures could not be sold if the Prospectus disclosed the Original Guaranties, and that the Bank Defendants agreed to execute the Releases the day before the Debentures were delivered so the Prospectus might omit reference to the Original Guaranties. Complaint ¶ 11.

Plaintiffs charge Defendants with conspiracy to violate, aiding and abetting the violation of, and a substantive violation of the Securities Exchange Act of 1934 ("the Exchange Act"), specifically of §§ 10(b), 20 and 27, 15 U.S.C. §§ 78j(b), 78t, and 78aa, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

## DISCUSSION

### I. ORDER IN WHICH MOTIONS SHOULD BE CONSIDERED

 Before the Court are five motions: the Bank Defendants' joint motion to dismiss on grounds of *forum non conveniens,* and the individual motions of Barclays Australia, Chase AMP, Sumitomo, and Security Pacific to dismiss for lack of personal jurisdiction. In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947), the Supreme Court stated, "[T]he doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction or mistake of venue." This language indicates that a court may not consider a *forum non conveniens* motion unless there is subject matter jurisdiction over the case, personal jurisdiction over the parties, and proper venue. Accordingly, when a *forum non conveniens* motion and motions to dismiss for lack of personal jurisdiction are before a court, the court must first consider the jurisdictional objections. *See Monsanto International Sales Co., Inc. v. Hanjin Container Lines, Ltd.,* No. 88 Civ. 1673, 1991 WL 210951 at *1, 1991 U.S.Dist. LEXIS 14189 at *3 (S.D.N.Y. Oct. 8, 1991) (KMW); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3828 (1976). Accordingly, this opinion will address the jurisdictional motions before reaching the issue of *forum non conveniens.*

### II. PERSONAL JURISDICTION

 A plaintiff has the ultimate burden of establishing jurisdiction over a defendant by a preponderance of the evi-

---

**2.** The Subsidiaries were: Speedo Group Limited, Speedo Knitting Mills PTY Limited, Formfit Holdings Limited, Bradmill Textiles Limited, Bradmill Workwear PTY Limited, National Textiles Limited, Pelaco Australia (Holdings) Limited, Australian Consolidated Hosiery (Holdings Limited), Kortex Australia (Holdings) Limited, Jacquard Fabrics (Holdings) Limited, The Stubbies Clothing Company Limited, King Gee Clothing Company Limited, Kotara Limited, Speedo International BV and Toronto Fashions (Holdings) Limited.

dence. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). However, until an evidentiary hearing on the jurisdictional issue is held, a plaintiff need only make out a *prima facie* case for jurisdiction through its pleadings and affidavits. *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Such pleadings and affidavits are to be construed in the light most favorable to the plaintiff, and all doubts must be resolved in the plaintiffs' favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

Section 27 of the Exchange Act provides the statutory basis for the exercise of personal jurisdiction in cases brought thereunder.[3] The Second Circuit has interpreted § 27 to extend personal jurisdiction to the full reach permitted by the due process clause. In the case of a defendant not personally present in the United States at the time of service, the boundaries of this reach are best defined by §§ 35–37 of the Restatement (Second) of Conflict of Laws (the "Restatement"). *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 998 (2d Cir. 1975), *citing Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326, 1339–40 (2d Cir.1972). Sections 35–37 of the Restatement provide three separate grounds for asserting jurisdiction over a defendant: (1) doing business in the state, § 35; doing an act in the state, § 36, and causing effects in the state by an act done elsewhere, § 37.[4] These principles apply to corporations as well as to individuals pursuant to §§ 47–50 of the Restatement. *Leasco,* 468 F.2d at 1440.

Plaintiffs assert jurisdiction over the moving Defendants based on four theories: (A) that each Defendant is subject to jurisdiction based on the acts committed by its co-conspirators in the United States; (B) that each Defendant meets the "effects test" of § 37 of the Restatement (Second); (C) that each Defendant is doing business in the United States pursuant to § 35 of the Restatement (Second); and (D) that each Defendant should be deemed to be present in the United States because each is a "mere department" of its parent corporations which is present in the United States.

## A. *Conspiracy Theory*

Jurisdiction may exist over each of the moving Defendants based on acts committed by their co-conspirators in the United States pursuant to a conspiracy to defraud.

**3.** Section 27 provides in pertinent part:

Any suit or action to enforce any liability or duty created by this title or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district or wherever the defendant may be found.

**4.** Restatement (Second) § 35 provides:

Doing Business in State.
(1) A state has power to exercise judicial jurisdiction over an individual who does business in the state with respect to causes of action arising from the business done in the state.
(2) A state has power to exercise judicial jurisdiction over an individual who has done business in the state, but has ceased to do business there at the time when the action is brought, with respect to causes of action arising from the business done in the state.
(3) A state has power to exercise judicial jurisdiction over an individual who does business in the state with respect to causes of action that do not arise from the business done in the state if this business is so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction.

Restatement (Second) § 36 provides:
Doing an Act in State.
(1) A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act.
(2) A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action not in tort arising from the act unless the nature of the act and of the individual's relationship to the state and to other states make the exercise of such jurisdiction unreasonable.

Restatement (Second) § 37 provides;
Causing Effects in State by Act Done Elsewhere.
A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.

In *Leasco*, 468 F.2d at 1343, Judge Friendly considered this basis of jurisdiction under § 27 of the Exchange Act and noted, "To be sure, the rule in this Circuit is that the mere presence of one conspirator ... does not confer jurisdiction over another alleged conspirator." Judge Friendly found that based on the facts then before the court, the foreign defendant could not be imputed to have knowledge of the conspiracy. He warned, however, that such jurisdiction might be proper in other factual situations.[5] Therefore, *Leasco* implies that the conspiracy theory urged by Plaintiffs is a proper basis for jurisdiction under the Exchange Act.

■ Many courts in this Circuit have asserted personal jurisdiction over absent defendants pursuant to a conspiracy theory.[6] *See, e.g., Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260 (S.D.N.Y.1991); *Grosser v. Commodity Exchange, Inc.*, 639 F.Supp. 1293 (S.D.N.Y. 1986); *Singer v. Bell*, 585 F.Supp. 300 (S.D.N.Y.1984); *Soltex Polymer Corp. v. Fortex Industries, Inc.*, 590 F.Supp. 1453 (E.D.N.Y.1984); *Dixon v. Mack*, 507 F.Supp. 345 (S.D.N.Y.1980); *Socialist Workers Party v. Atty. Gen. of United States*, 375 F.Supp. 318 (S.D.N.Y.1974). However, as the moving Defendants accurately point out, a bland assertion of conspiracy or agency is insufficient to establish jurisdiction on this basis. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527

F.2d 87, 93–94 (2d Cir.1975). Rather, to establish jurisdiction on a conspiracy theory, a plaintiff must: (1) make a *prima facie* factual showing of a conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in this jurisdiction. *Chrysler Capital*, 778 F.Supp. at 1266.

### 1. *Prima Facie* Showing of Conspiracy

■ Although courts have disagreed over the necessary elements of a claim for civil conspiracy to violate the federal securities laws, in this Circuit a plaintiff must prove the following elements: (a) a primary violation of the securities laws by another; (b) an agreement between the alleged defendant conspirator and the primary violator to violate the securities laws; (c) an illegal or fraudulent act committed by the alleged defendant conspirator in furtherance of the conspiracy; and (d) damage to a person not a member of the conspiracy. *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119 (2d Cir.1982); *Bresson v. Thomson McKinnon Securities, Inc.*, 641 F.Supp. 338, 348 (S.D.N.Y.1986); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1153 (S.D.N.Y. 1979); *Eastwood v. Nat'l Bank of Commerce*, 673 F.Supp. 1068 (W.D.Okla.1987); *Hill v. Equitable Bank*, 655 F.Supp. 631,

---

**5.** The Court ruled that the mere partnership relation between two English solicitors, one an absent defendant and one a defendant deemed present in the United States, could not alone support a finding of jurisdiction over the absent alleged conspirator. However, Judge Friendly noted for the Court that a closer relationship between the two parties might lead to a finding of jurisdiction. For example, if the absent defendant was a senior partner in a firm who had delegated duties to his younger partner, the presence of the younger partner might confer jurisdiction over the senior partner pursuant to the conspiracy. With that in mind, the Court vacated the lower court's dismissal of the case for lack of personal jurisdiction with respect to the solicitor and remanded the case to allow for further discovery on the jurisdictional issue.

**6.** Although the courts which have found jurisdiction based on this theory were applying New York's long-arm statute, New York Civil Practice

Law and Rules ("CPLR") § 302, the theory is equally appropriate when applying § 27 of the Exchange Act. This is so for two reasons. First, § 27 of the Exchange Act was meant to extend personal jurisdiction to the full reach permitted by the due process clause. *Leasco*, 468 F.2d at 1339. CPLR § 302 does not extend jurisdiction as far as is constitutionally permissible. *Banco Ambrosiano S.P.A. v. Artoc Bank & Trust, Ltd.*, 62 N.Y.2d 65, 476 N.Y.S.2d 64, 67, 464 N.E.2d 432, 435 (1984). Therefore, if there is jurisdiction pursuant to CPLR § 302, then such jurisdiction will be constitutional and within the reach contemplated by § 27 of the Exchange Act. Second, the conspiracy theory upon which Plaintiffs rely is really the "doing an act within the state" theory of § 36 of the Restatement (Second) of Conflict of Laws which was endorsed in *Leasco*. The conspiracy theory is merely a way of imputing acts done in the state to the out of state conspirator.

645–46 (D.Del.1987). *See also* Patricia A. O'Hara, *Erosion of the Privity Requirement in Section 12(2) of the Securities Act of 1933*, 31 U.C.L.A. L.Rev. 921, 980 (1984). Accordingly, if the Complaint contains each of those elements, then Plaintiffs have made out the required *prima facie* case.

### a. Primary violation by another

■ The Complaint clearly alleges substantive violations of the federal securities laws by Linter Textiles. Linter Textiles filed with the SEC the Prospectus which contained the allegedly false material representations of fact and caused the Prospectus to be disseminated in this district.

### b. Agreement among conspirators

Plaintiffs allege that on October 12, 1988, the day before the delivery of the Debentures, Linter Group, the Subsidiaries and each of the Bank Defendants executed the identical Releases, releasing the Subsidiaries from the Original Guaranties of the Linter Group Debt; that at the time the Releases were executed, it was agreed among those defendants that shortly thereafter Linter Textiles would guaranty the Linter Group Debt to the Bank Defendants; and that it was agreed among those defendants that between October 27, 1988 and November 18, 1988, the Subsidiaries would also execute identical guaranties of the Linter Group Debt. Complaint ¶ 7(b)–(d). Plaintiffs further allege that the defendants were engaged in a scheme to defraud by concealing the agreements relating to the guaranties of the Linter Group debt by Linter Textiles and by the Subsidiaries in order to induce the purchase of the Debentures in the public offering. Complaint ¶ 9. Plaintiffs charge that the Bank Defendants agreed to this conduct because they knew that the Debentures could not be sold if the Prospectus disclosed the Original Guaranties. Complaint ¶ 11.

These allegations are sufficient to charge that the Bank Defendants, as well as Linter Group, Linter Textiles, and the Subsidiaries, were party to agreements to violate the federal securities laws.

### c. Illegal or fraudulent act in furtherance of the conspiracy

Each of the Bank Defendants is alleged to have executed a release of the Original Guaranties of the Linter Group Debt prior to the date of the public offering. These releases were executed pursuant to a scheme to defraud the purchasers of the Debentures by replacing the Original Guaranties with new guaranties after the public offering. These promises to replace the Original Guaranties were not disclosed in the Prospectus and are alleged to have been kept. The Complaint's allegations therefore satisfy the requirement that there have been at least one fraudulent overt act by one of the alleged conspirators in furtherance of the conspiracy.

### d. Injury or damage

The Complaint's allegations also satisfy the fourth requirement of damage or injury. It alleges that in reliance on the allegedly fraudulent Prospectus, Plaintiffs or their predecessors-assignors in interest purchased the Debentures and have suffered substantial losses on their purchases and were damaged thereby. Complaint ¶¶ 8, 13.

2. Relationship of the Moving Bank Defendants to the Conspiracy

■ Plaintiffs not only must allege a *prima facie* claim of conspiracy, but also they must allege specific facts warranting the inference that the defendants were members of the conspiracy and set forth evidentiary facts to connect the defendants with transactions occurring in the United States. *Chrysler Capital*, 778 F.Supp. at 1268–69; *Huang v. Sentinel Gov't Secur.*, 657 F.Supp. 485, 492 (S.D.N.Y.1987); *Singer v. Bell*, 599 F.Supp. 350, 353 (S.D.N.Y. 1984). A bland allegation or assertion of a conspiracy is clearly insufficient. *Id.* Plaintiffs have satisfied this requirement.

The Prospectus indicates that the proceeds of the sale of the Debentures would be used to repay substantial indebtedness owed by Linter Textiles to creditors, including Linter Group. Bank Defs. Forum Non

Conveniens Motion, Exh. A at 5. Each Bank Defendant must have been aware of a large public sale of Debentures, the proceeds of which would affect substantially the financial situation of one of its significant debtors.

J. Ezra Merkin, the General Partner of Ariel Capital II L.P. and the President of the investment adviser of Ariel Fund Ltd., states that had the Prospectus disclosed the Subsidiaries' Original Guarantees, Linter Textiles would have been revealed as highly leveraged with debt at the time of the public offering.[7] The Releases allowed Linter Textiles to portray itself as a solvent company having minimal debt. Merkin Aff. at 4–5. Mr. Merkin also states that Bank Defendants received substantial benefits from the cash raised by the public offering. Merkin Aff. at 3–5. The Bank Defendants, who were all creditors of Linter Group, are thus alleged to have benefitted from a large injection of cash to Linter Textiles, although the alleged purpose as stated in the Prospectus was to repay debts owed by Linter Textiles to Linter Group.

Such allegations warrant an inference that the Bank Defendants were members of a conspiracy to defraud purchasers of the Debentures in the United States.

### 3. Tortious Act by Defendant's Co-Conspirator

The heart of Plaintiffs' allegations is that Linter Textiles, an alleged co-conspirator of the Bank Defendants, made materially false and misleading representations in the Prospectus. Complaint ¶ 7. The Prospectus, which was included in the registration statement filed with the S.E.C., Complaint ¶ 6, was sent to purchasers, some of whom are United States and New York residents. Merkin Aff. at 2.

Accordingly, this Court has personal jurisdiction over the Bank Defendants.

### B. *Other Theories of Jurisdiction*

Because there is personal jurisdiction pursuant to the conspiracy theory, it is not necessary to address Plaintiffs' other theories.

## III. FORUM NON CONVENIENS

### A. *Legal Standard*

In *Gulf Oil v. Gilbert, supra,* and the companion case of *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Supreme Court set forth the rule that a plaintiff's choice of forum should rarely be disturbed on grounds of *forum non conveniens.* However, when there is an alternative forum to hear the case and when trial in the chosen forum would be oppressive and vexatious to the defendant out of all proportion to the convenience to the plaintiff, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case. *Gulf Oil,* 330 U.S. at 508–9, 67 S.Ct. at 843. *Accord Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981).

To guide the trial court's determination, the Supreme Court provided a list of "private interest factors" affecting the convenience of the litigants and a list of "public interest factors" affecting the convenience of the forum. *Gulf Oil,* 330 U.S. at 508–509, 67 S.Ct. at 843. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the avoidance of unnecessary problems in conflict of laws or in the appli-

---

7. Because this is a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) the Court's consideration of material outside the pleadings is proper. *Visual Sciences, Inc. v. Integrated Communications Inc.,* 660 F.2d 56, 58 (2d Cir.1981). In contrast to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), such consideration of extra-pleading material does not convert the motion into one for summary judgment. *See Kopec v. Coughlin,* 922 F.2d 152 (2d Cir.1991).

cation of foreign law; (4) the unfairness of burdening citizens in an unrelated forum with jury duty. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. *Accord Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

### B. *Availability and Adequacy of Alternative Forum*

■ The determination of whether there is an alternative forum involves a consideration of whether the defendant seeking dismissal is amenable to process in the other jurisdiction. However, "[W]here the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Piper Aircraft*, 454 U.S. at 255 n. 22, 102 S.Ct. at 265 n. 22.

■ Plaintiffs offer no affidavits contradicting Defendants' proof that Australia is an adequate alternative forum.[8] Instead, Plaintiffs argue that because they seek relief under a federal statute, dismissal on grounds of *forum non conveniens* is inappropriate because no foreign forum will hear their federal statutory claims. They point to *CL–Alexanders Laing & Cruickshank v. Goldfeld*, 709 F.Supp. 472, 481 (S.D.N.Y.1989), in which Judge Mukasey distinguished those cases in which federal securities law claims are mere "window dressing" from those in which the federal law claims are "the heart of the complaint." In the latter, Judge Mukasey noted, American courts have a strong public interest in ensuring that plaintiffs not be forced to depend on the vagaries of another country's laws. *Id.* While the distinction is no doubt valid, nothing in Judge Mukasey's opinion suggests that the interest of plaintiffs with federal causes of action in avoiding dismissal on *forum non conveniens* is so great as to make all foreign fora inadequate *per se*. That federal law claims are at the heart of the Com-

plaint here, however, is a factor to be considered by the Court in making its determination. It does not, however, make Australia a *per se* inadequate forum.

### C. *Plaintiffs' Choice of Forum*

■ As the Court in *Piper* noted, there is a strong presumption in favor of a plaintiff's choice of forum, and this choice may be overcome only when the public and private factors set forth in *Gulf Oil* clearly point towards trial in the alternative forum. *Piper*, 454 U.S. at 250, 102 S.Ct. at 263. Furthermore, in *Koster*, 330 U.S. at 524, 67 S.Ct. at 832, the Court ruled that a plaintiff's choice of forum is entitled to even greater deference when the plaintiff has chosen its home forum. In any balancing of conveniences, a real showing of convenience by the plaintiff will normally outweigh the inconvenience the defendant may have shown. *Id.* As Judge Friendly stated in *Leasco*, 468 F.2d at 1344, when considering a motion to dismiss for *forum non conveniens*, "[C]ourts should require positive evidence of unusually extreme circumstances, and should be convinced that material injustice is manifest before exercising any such discretion to deny a citizen of this country access to the courts of this country."

Accordingly, the Bank Defendants have a high hurdle to clear before this Court will dismiss an action brought by a number of United States residents on grounds of *forum non conveniens*.

### D. *Private Interest Factors*

#### 1. Ease of Access to Sources of Proof

■ The Bank Defendants assert that because they dealt with the various Linter companies only in Australia, the documents relating to the banking transactions at issue are located in Australia. The location of documents is a factor to be considered in

---

**8.** Defendants' expert on Australian law states that Australian courts would exercise personal jurisdiction over all of the Defendants. Declaration of John Dyson Heydon of July 29, 1991 ("Dyson Decl.") ¶ 3. The Australian courts have a system of pre-trial discovery, although it is not as broad as that provided for by the Federal Rules of Civil Procedure. Dyson Decl. ¶¶ 8–10.

Australian law provides statutory and common law remedies for the sort of fraud alleged in the Complaint. Dyson Decl. ¶¶ 4–6. Other federal courts have found Australia to be an adequate alternative forum and dismissed on grounds of *forum non conveniens. See e.g. Interpane Coatings, Inc. v. Australia & New Zealand Banking Group Ltd.*, 732 F.Supp. 909 (N.D.Ill.1990).

**225**

the *forum non conveniens* analysis. *Calavo Growers of California v. Belgium,* 632 F.2d 963, 967 (2d Cir.1980), *cert. denied* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). Nevertheless, in light of the advances in transportation and communication since 1947, the year *Gulf Oil* was decided, this factor will be accorded less weight in this Court's calculus. *See Overseas Programming Co. v. Cinematographische Commerz–Anstalt,* 684 F.2d 232 (2d Cir.1982); *Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir.1981).

#### 2. Compulsory Process for Unwilling Witnesses and Costs of Obtaining Willing Witnesses

The Bank Defendants state that the majority of the witnesses whom they expect to call reside in Australia. These witnesses include numerous current and former employees of the Bank Defendants, employees of the various Linter companies, and the Linter companies' Australian accountants. The Bank Defendants argue that the inability of any of the parties to compel the attendance of the non-party Australian witnesses would prejudice the Bank Defendants. *Gulf Oil,* 330 U.S. at 511, 67 S.Ct. at 844. As well, they claim that the difficulty and expense of transporting willing witnesses from Australia to New York would be disruptive and burdensome and therefore favors dismissal.

Plaintiffs respond that their party witnesses as well as important third party witnesses are located in New York. These third party witnesses, including personnel at Drexel, the underwriter of the Debentures, and at Skadden Arps Slate Meagher & Flom, Linter Textile's counsel, would be beyond the reach of compulsory process if the case were prosecuted in Australia.

A sheer numerical calculus would seem to indicate that Australia would be a more convenient forum than New York for the potential witnesses to this action. However, prosecution in either forum will prohibit compulsory process over some of the possible third party witnesses.

### E. Public Interest Factors
#### 1. Court Congestion

There is no delay for trial in this part, nor has there been for over one year. Upon completion of discovery, this case will be scheduled for an immediate trial. Accordingly, the Court does not consider calendar congestion a factor which favors dismissal.

#### 2. Local Interest in the Controversy

The Bank Defendants argue that because the Complaint alleges fraud against major Australian banking institutions and major Australian companies, Australian courts have a great interest in the resolution of this dispute. While the Australian courts do have an interest in the conduct of Australian businesses, the United States courts easily have as great or a greater interest in this action. This Court has a substantial interest in affording United States citizens a forum, in enforcing the federal securities laws, and in preserving the integrity of markets for securities in the United States.

Plaintiffs are all investors with principal places of business located in the United States. Pursuant to a registration statement and Prospectus filed with the SEC, they purchased the Debentures in the United States from a United States underwriter. The alleged misrepresentations took place in the United States. The alleged purpose of these misrepresentations was to defraud United States investors. Accordingly, this Court has an interest in overseeing the resolution of this dispute. *See Bersch v. Drexel Firestone,* 519 F.2d at 993 (anti-fraud provisions of the federal securities laws apply to losses from sales of securities to U.S. citizen-residents whether or not the acts of material importance occurred in the U.S.); *S.E.C. v. Banca Della Svizzera Italiana,* 92 F.R.D. 111, 117 (S.D.N.Y.1981) (strength of the U.S. interest in enforcing its securities laws to ensure the integrity of its financial markets "cannot seriously be doubted").

#### 3. Familiarity With Applicable Law

As presently framed, this action will require the application of United States secu-

rities law, not Australian laws. Accordingly, there is no risk that this Court will have to apply law with which it is not familiar.

### 4. Unfair Burden

Because this suit involves United States plaintiffs and seeks relief for breaches of United States law, there is no unfairness in burdening the citizens of New York with the obligation of assisting in its resolution.

### F. *Conclusion*

Prosecution of this action in Australia might be somewhat more convenient for the numerical majority of the witnesses involved. The overall expense involved might be less in Australian court than here, and it would clearly be more convenient for the Bank Defendants. Those factors alone, however, are insufficient to deny Plaintiffs their chosen home forum. The Bank Defendants have not met the substantial burden of proof required for this Court to dismiss this case in favor of prosecution in Australia.

### CONCLUSION

For the reasons stated above, the motions to dismiss brought by Barclays Australia, Chase AMP, Sumitomo, and Security Pacific are denied. The Bank Defendants' joint motion to dismiss is also denied.

All counsel are ordered to attend a pretrial conference on Tuesday, January 28, 1992 at 9:00 a.m. in courtroom 302 to set a schedule for discovery and trial.

IT IS SO ORDERED.